**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

Charles E. Butler
   Resident Judge

Leonard L. Williams Justice Center
500 North King Street, Suite 10400
Wilmington, Delaware  19801-3733
Telephone (302) 255-0656

September 16, 2021

Karin M. Volker, Esquire
Kristina Lehman, Esquire
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE  19801

Sonia Augusthy, Esquire
Office of Defense Services
Carvel State Office Building
820 N. French Street
Wilmington, DE  19801

> **Re:** *State v. Tyaire Norris*
> **ID:  1906002492**

Counsel:

I understand that trial in this matter is imminent and the parties need a ruling on Defendant's motion *in limine* concerning certain identification testimony.  In view of the urgency of the matter, the Court will dispense with some of the usual rhetoric attendant upon judicial opinion writing.

The case concerns a homicide that occurred in the City of Wilmington.  Certain individuals can be seen at or near the crime scene at the critical time.  The

1

identities of these individuals were unknown until a Wilmington Police officer –
unrelated to the investigation – viewed the video and recognized the Defendant on
the captured video. The State intends to offer the identifying police officer as a
witness during trial for the purpose of tying the Defendant to the crime scene.

The prospect of identification by a police officer from a piece of video
surveillance implicates a number of sensitive issues, not the least of which being the
possibility that the jury may wonder exactly how it is that the officer knows the
defendant so well that he can identify him on a video.

But assuming that issue can be addressed through an appropriate limiting
instruction, the Defense urges that no such identification should be permitted at all,
citing *Thomas v. State*,[1] *Saavedra v. State*[2] and Delaware Rules of Evidence Rules
701 and 403.

Rule 701 concerns "lay testimony" as opposed to expert testimony and
permits lay opinions that are 1) rationally based on the witness' perceptions, 2)
helpful to determining a fact in issue and 3) not based on scientific, technical or other
specialized knowledge within the scope of Rue 702. This testimony clearly falls
within Rule 701. The officer's knowledge may be "specialized," but it is not based
on scientific, technical or other specialized knowledge – as required under Rule 702

---

[1] 2019 WL 1380051 (Del. Mar. 26, 2019)
[2] 225 A.3d 364 (Del. 2020)

– but rather it is based upon the knowledge that any citizen has upon seeing a person they recognize.

The cases are helpful, but not dispositive. *Saavedra* is the less helpful of the two, because the identification issues arose in context of allegations of prosecutorial misconduct when video was played and the police witness identified various actors on the tape. The Court ruled that while it was not prosecutorial misconduct, the Court did "not condone the use of narrative testimony during a video presentation to a fact finder beyond what is necessary to lay the foundation for the video's admission and to present an uncontroversial explanation of what the video depicts."[3] Here, the video merely depicts two individuals walking on a street. Unlike *Saavedra*, this is not a video of a melee with numerous individuals moving about and an officer describing his own opinion of who is doing what.[4]

*Thomas v. State* comes closest to our facts as it involves an officer viewing a piece of surveillance video and offering his opinion that the person seen in the video is the defendant. The identification testimony was permitted over defendant's objection. After laying out the problem of witnesses identifying defendants from a video when the video and the defendant are both available for the jury to see for themselves, the Court said, "We have serious reservations about the admission of

---

[3] *Saavedra,* 225 A.3d at 374.
[4] *E.g., id.* at 374–77.

this type of identification testimony."[5] Nevertheless, the Court elected to "stop short of finding an abuse of discretion in the Superior Court's evidentiary ruling"[6] – hardly a ringing endorsement for the evidentiary ruling.

Indeed, the Court considered that 1) the defense may have opened the door to the testimony by suggesting that it was not the defendant in the video, 2) the testimony was harmless due to the other evidence of defendant's guilt and 3) he may have been improperly "vouching" for other witnesses, but ultimately concluded he was not.[7] These specific issues are not present in the instant motion, but they demonstrate the many tendrils that can flow from a ruling and the need for the Court to be fully aware of the attendant facts and circumstances before giving final approval of the proffered testimony.

Here, for example, the State has proffered a copy of the video in question and, unlike most video surveillance seen in court, this one is in color and of very high quality, very clearly depicting the faces of two subjects. They are seen walking toward the crime scene and, shortly thereafter I presume, running back. But the clear picture is fleeting and they are not wearing name tags. So their identities are not

---

[5] *Thomas*, 2019 WL 1380051, at *3.
[6] *Id.*
[7] *Id.* at *3–4.

known merely by viewing the video.[8]  Someone who could identify them by name would obviously be relevant.

If the State had a witness other than the police officer, perhaps a neighbor of many years, who knows the defendant and recognizes and can identify him in the video, there is an argument that the witness is invading the province of the jury.  But we might say that about any witness – they all have something to say about the event in question or who did it.  All of them are there to persuade the jury of something.  As between showing the video without an identification of anyone and showing the video to a witness who knows the subject in the video and can testify that person is the defendant, the latter is surely the more prudent course.

Moving past the problem of relevance, we come to the problem of undue prejudice, embedded in the fact that the witness is a police officer.  Defendant has argued that the testimony should be excluded under Rule 403 because it is more prejudicial than helpful.  But having concluded that it is helpful, abiding the Defendant's request that the testimony be excluded entirely is too drastic a remedy.

---

[8] *See Saavedra*, 225 A.3d at 381 ("[I]n determining whether the witness" should be permitted to testify to the witness's special familiarity with the defendant, "the court should . . . consider whether the images from which identification is to be made are not either so unmistakably clear or so hopelessly obscure that the witness is no better suited than the jury to make the identification." (internal quotation marks omitted)); *see also id.* at 381 n.78 (collecting additional supportive authority).

The prejudice may be remediated by careful questioning of the police officer[9] and an appropriate limiting instruction to the jury.[10] The Court will engage with counsel during trial to find the least prejudicial introduction possible for the police witness testimony and looks forward to a draft limiting instruction from both parties to alleviate Defendant's concerns of prejudice.

The witness may testify to his identification. The questioning should be circumscribed to diminish or eliminate any suggestion that the Defendant has prior arrests. The parties should confer about a mutually agreed upon limiting instruction and, barring one, defendant may proffer one himself.

**IT IS SO ORDERED**.


Resident Judge Charles E. Butler

---

[9] *See id.* at 380–81 ("Before a law enforcement witness uses a video clip . . . to identify the defendant, due caution should be exercised to ensure that a proper foundation is laid establishing, to the trial court's satisfaction, that the witness has a special familiarity with the defendant that would put him in a better position than the jury to make the identification.")

[10] *See id.* at 381 ("In [its] instruction, . . . the trial [court] emphasized that it was the sole province of the jury to determine the identity of the [defendant]. . . . [T]hese were meaningful and practical steps . . . and mitigated any prejudicial effect the detective's testimony may have caused.")